**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4785-16T2

RONALD HALAL,

    Plaintiff-Respondent/Cross-
    Appellant,

v.

DAN SPIRO, AL MARINO,[1] LISA MARIE
KRYSTOPIK,[2]

    Defendants,

and

ALBERT SALMORIN, A&M POWER WASHING,
and A&M MAINTENANCE,

    Defendants-Appellants/Cross-
    Respondents.

_____

        Submitted June 6, 2018 — Decided July 12, 2018

        Before Judges Currier and Geiger.

        On appeal from Superior Court of New Jersey,
        Law Division, Special Civil Part, Middlesex
        County, Docket No. DC-10656-16.

---

[1]  Albert Salmorin was incorrectly pled as Al Marino.

[2]  Plaintiff voluntarily dismissed defendant Lisa Krystopik after
a review of her discovery responses.

Beninato & Matrafajlo, attorneys for appellants/cross-respondents (Dan T. Matrafajlo, on the briefs).

Skolnick Legal Group, PC, attorneys for respondent/cross-appellant (Martin P. Skolnick and John E. Icklan, of counsel and on the brief).

PER CURIAM

In this appeal and cross-appeal arising out of a contract for home improvement work, we are asked to review the judge's rulings following a bench trial in the Special Civil Part. Having considered all parties' contentions in light of the record and applicable principles of law, we affirm.

We derive our factual summary from the trial record. Plaintiff Ronald Halal decided to sell his house in April 2016 as he was relocating to California for his employment. The house needed substantial renovations before it could be listed for sale, and plaintiff asked his friend and realtor Carlo Flores to find a contractor. Flores' first choice as a contractor was unable to do the work. He was then approached by defendant Dan Spiro who advised he could do the work.[3]

Flores emailed a proposal to plaintiff that detailed home improvement work in the amount of $16,000. The proposal was from

---

[3] Spiro did not answer the complaint and default was entered against him.

Dan Spiro on the letterhead of defendant A&M Maintenance. Plaintiff testified he made the initial payment of $7500 via check to Flores, because he "didn't have the bank account [information] of Dan Spiro at the time." Plaintiff instructed Flores to give the check to Spiro "or whoever [was] in charge of the renovations." The check was endorsed by both Flores and defendant Albert Salmorin, and deposited at TD Bank into the account of defendant A&M Power Washing. A second payment of $5225 was made via wire transfer after Spiro texted plaintiff the account information for A&M Power Washing. Plaintiff's payments therefore totaled $12,725.

Following these payments, plaintiff testified he began "having trouble getting in touch with Dan [Spiro]." His family, who was still in New Jersey, told him nobody was coming to the house to make repairs, and when he returned to New Jersey himself, neighbors told him "there was barely anyone coming in other than [his] family to check on the house."

Flores advised plaintiff that Salmorin and Spiro were partners and he gave plaintiff Salmorin's phone number. In mid-August, plaintiff called Salmorin, who told plaintiff "he was going to get involved in this and he [would] try to get this fixed and he was disappointed with Dan [Spiro]." Plaintiff testified further that Salmorin told him that he and Spiro had been working

3                                                                    A-4785-16T2

together for some time. Salmorin was aware of both the proposal submitted by Spiro and the specific work to be done on plaintiff's home. Shortly thereafter, plaintiff stated Salmorin was not returning his phone calls so he texted him instead. There was one response to his texts in which Salmorin advised the house was being painted. The painting was never completed.

Because neither Spiro, Salmorin nor the A&M entities completed the work set forth in the proposal, plaintiff was forced to hire another company and paid $7000 to complete the work. Plaintiff added he was unable to sell the property until much later, as the work was not completed as scheduled.

Salmorin testified that he was the sole proprietor of both A&M Power Washing and A&M Maintenance. He performs power washing services but denied doing home improvement work. Salmorin advised he had known Spiro for many years and was aware that Spiro was working on plaintiff's home. He was unaware, however, that Spiro had listed A&M Maintenance on his proposal.

Salmorin denied ever representing himself as being partners with Spiro. He stated that when contacted by plaintiff, he became the "middleman" and reached out to Spiro only to find out the status of the work so that he might advise plaintiff.

When asked how plaintiff's checks were deposited into his account, Salmorin claimed he deposited the money as a favor to

Flores, hoping to get power washing jobs on homes referred to him by Flores. He stated Flores was in the process of refinancing his home and could not deposit the check in his own account because he did not want the funds revealed to his lender. Spiro could not deposit the check as he did not have a bank account.

Salmorin contends he gave the $12,725 deposited into his account to Spiro in cash as payment for the work. Although plaintiff had requested Salmorin's bank records during discovery, they had not been produced. Therefore, there was no record before the court to reflect a withdrawal of plaintiff's funds from Salmorin's account.

Flores testified he had been friends with plaintiff for ten years and served as his real estate broker in the sale of his New Jersey home. He said Spiro was working for a contractor who was doing renovations on his own home and overheard Flores's inquiries to that contractor about undertaking work at plaintiff's home. Flores stated Spiro told him he had a partner named Al, and they had a licensed home improvement business — A&M Maintenance — together. Spiro provided a business card to Flores for A&M Maintenance. Thereafter, Flores recommended Spiro to plaintiff.

Flores met Salmorin for the first time at the bank when he gave Salmorin plaintiff's check to deposit. He testified Spiro told him he was not available so Flores should meet with his

partner Al to make the deposit in their business account. Flores stated Salmorin talked to him at the bank about prior home improvement and commercial work he had done.

Flores also testified he did not know Spiro did not have a bank account. He was just told by Spiro to give the check to Salmorin.

In his complaint, plaintiff alleged against all defendants a violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, breach of contract, negligent construction, breach of the covenant of good faith and fair dealing, equitable and common law fraud, negligent misrepresentation, breach of warranty, and a claim for punitive damages. Prior to trial, default judgment was entered against Spiro in the amount of $15,492.[4]

At the completion of the bench trial, Judge J. Randall Corman issued an oral decision on June 12, 2017. Because he concluded there was no contract between plaintiff and Salmorin, the latter could not be liable under the CFA. However, the judge also concluded that Salmorin's failure to produce his bank records to corroborate his contention he had withdrawn monies from his account following plaintiff's deposits and paid Spiro in cash, required an adverse inference that the withdrawals had not occurred. The

---

[4]  Judge Corman also awarded plaintiff reasonable attorney's fees, filing fees, and costs of suit against Spiro.

court found plaintiff had proven his claim of unjust enrichment. Judgment was entered against Salmorin and the A&M entities for $12,725.

On appeal, Salmorin argues the trial court erred by assessing an adverse inference against him for his failure to produce bank statements. He contends that plaintiff had the burden to produce those records affirmatively and should have done so through a subpoena to the bank. Salmorin also contends the judge erred in granting judgment for unjust enrichment. Plaintiff asserts in his cross-appeal the trial judge erred in not finding Salmorin violated the CFA.

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011)). Although our review of legal determinations made by the trial court is de novo, we will not disturb the factual findings of the trial court unless we are "convinced that they are so manifestly unsupported by[,] or inconsistent with[,] the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Seidman, 205 N.J. at 169). Additionally, we defer to the trial court's credibility determinations because it "'hears the case, sees and

observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Judge Corman noted Flores and Salmorin gave similar versions of what occurred at the bank when they met to deposit plaintiff's check. Salmorin confirmed a second transaction occurred — a deposit of monies wired from plaintiff's account to him.

Salmorin's bank records were in his control. He had easy access to these documents. It seems unquestionable if the records corroborated Salmorin's version of events, he would have produced them. A record evidencing the withdrawal of all funds deposited by plaintiff into Salmorin's account would have ended plaintiff's claim of unjust enrichment. Salmorin did not produce documents requested in interrogatories and document requests, nor did he present those records at trial. Given that evidence, Judge Corman's conclusion that the records would not have supported Salmorin's contentions is supported by the credible evidence in the record.

Plaintiff met his burden of proving Salmorin received funds to which he was not entitled as he did not perform any work on plaintiff's home. "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that

retention of that benefit without payment would be unjust.'" <u>Cty.</u> <u>of Essex v. First Union Nat'l Bank</u>, 373 N.J. Super. 543, 549-50 (App. Div. 2004) (quoting <u>VRG Corp. v. GKN Realty Corp.</u>, 135 N.J. 539, 554 (1994)).

We briefly address the cross-appeal as we discern plaintiff's arguments to be meritless. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E). Judge Corman found plaintiff failed to establish a contractual relationship between him and Salmorin. Furthermore, plaintiff did not show there was an agreement with Salmorin to perform work at plaintiff's home. Plaintiff testified he did not speak to Salmorin until several months after he agreed to Spiro's proposal, and then he was only asking Salmorin to intercede with Spiro to get the promised work finished.

Without an agreement to perform work, Salmorin was not liable under the CFA for failing to perform the renovations on plaintiff's home. Plaintiff's argument that Salmorin and Spiro acted as a joint venture to perform the home improvement work is unsubstantiated by the evidence in the record. Rather, plaintiff is entitled, as discussed, to recovery under the equitable theory of unjust enrichment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                    A-4785-16T2